IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMOS LEE TATE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 18-148 Erie |
| v. ) | |
| ) | Judge Cathy Bissoon |
| SUPERVISOR HUD ) | |
| *Anonyminty [sic] Name* ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

## I. MEMORANDUM

**BACKGROUND**

Plaintiff Amos Lee Tate ("Plaintiff") commenced this *pro se* civil action by filing a Motion for leave to proceed i*n forma pauperis* (Doc. 1) on May 22, 2018. Attached to the Motion was a complaint (Doc. 1-1) directed against "Supervisor HUD anonyminty [sic] name." Compl. ¶2. The asserted jurisdictional basis for this lawsuit is "14th Amendment Due Process [and] Housing Discrimination Statute/Disability." *Id*. ¶3. Plaintiff's *in forma pauperis* motion was granted on May 23, 2018 (Doc. 2), and the Complaint was docketed that same day (Doc. 4).

In his Complaint, Plaintiff states that he was granted social security disability benefits in June 2016, after which time he applied for "Disability Housing" through HUD. Compl. ¶4. Plaintiff claimed he inquired, in person, on several occasions whether "any Disability single homes or single apartments [were] available," but "[t]hey on each occasion stated NO." *Id.* He then went on the HUD "Disability Website" to gather more information and found information relating to HUD's "Disability Voucher Program," which, as he understands it,

is "utilize[d] to accommodate, and necessitate, an individual life style[ ]" by allowing disabled individuals or their caretakers to "privately[ ] chose [sic] their own single home or single apartment." *Id.* The remainder of Plaintiffs' averments are essentially indecipherable. The Complaint makes a passing reference to "Racial Profiling," and states that someone "refus[ed] [Plaintiff] to be amended to the Disability Voucher Program . . . ." *Id.* It also alludes to Plaintiff issuing a "Subpoena Duces Tecum" relative to the city and county "availability records." *Id.* In terms of "relief sought," the Complaint suggests that Plaintiff desires a "Federal Conference" and "Trial." *Id.* ¶5. With respect to "damages," the Complaint simply states, "Intentional Humiliation[,] Intentional Distress[,] [and] Intentional Housing Discomfort (No where to go)[.]" *Id.*

On May 31, 2018, Plaintiff filed an additional document, styled "Administrative Discriminatory Review Appealant [sic] Discriminatory Review" (Doc. 6). In this document, Plaintiff lists himself as "Plaintiff" and "Housing Urban Development" as "Defendant." *Id.* He states that he went to the HUD office in Erie and was placed on the "SSID Housing list." *Id.* Thereafter, he checked with the office about "suitable Disability Housing" and was informed that they had no available apartments or single houses. *Id.* On one particular occasion, he was informed that a single room apartment would be available in Meadville, Pennsylvania in October 2016, and that he was "first on the list." When Plaintiff later returned to inquire about housing, however, he was told "they all [had] been taken." *Id.* Plaintiff's May 31st filing purports to assert two "causes of action." The first is entitled "discriminatory prejudice acts" and states that certain unidentified persons have "been telling [Plaintiff] an array of deceitful lies, and derogatory comments, for approximately two years, to hinder and misdirect [him]." *Id.* Plaintiff quotes these unidentified individuals has having stated, "Go down the street, we have

2

nothing for you," and "African Americans go down the street, to the Housing Authority, and get in the projects." *Id.* The second cause of action, designated "Preamble," merely states "government statute law circumvent [sic] disability housing voucher law." *Id.*

**STANDARD OF REVIEW**

Because Plaintiff is proceeding *in forma pauperis,* the Court must review his pleading in accordance with the amendments promulgated in the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996).[1] Under Section 1915(e) of the PLRA, the Court is required to screen Plaintiff's Complaint and dismiss the within action if the Complaint fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

In reviewing complaints under § 1915(e)(2)(B)(ii), a federal court applies the same standard that is applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *D'Agostino v. CECOM RDEC*, 436 F. App'x 70, 72 (3d Cir. 2011) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)). "Thus, we are required to 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Id.* at 72-73 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the complaint must contain factual allegations that raise a right to relief above the speculative level. *Id.* at 555.

---

[1] Although Plaintiff is not incarcerated, the amendments to the PLRA, codified as 28 U.S.C. § 1915, apply to non-prisoners who have been granted *in forma pauperis* status. *See Powell v. Hoover*, 956 F. Supp. 564, 566 (M.D. Pa. 1997) (holding that federal *in forma pauperis* statute is not limited to prisoner suits).

3

Accordingly, mere "labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." *Id*.

Quite independent of this obligation is the Court's duty to ensure in the first instance that it has subject matter jurisdiction over the matter in controversy. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); Fed. R. Civ. P. 12(b)(1) (recognizing the lack of subject-matter jurisdiction as a defense under Rule 12). A court's scope of review in this regard is shaped by whether the complaint is subject to a facial or factual jurisdictional attack. *See CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (where district court analyzes a motion under Rule 12(b)(1), "its first task is to classify the [defendant's] motion as either a factual attack or a facial attack."). A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Id*. (alterations in the original) (citing *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)).

In view of the procedural posture of this case, the Court is concerned only with a possible facial deficiency in Plaintiff's pleading. In undertaking its analysis, the Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 347 (3d Cir. 2012) (internal quotation marks and citation omitted). Although the Court must construe the facts alleged in the Plaintiff's favor, it need not accept bald assertions or legal conclusions as true. *Batchelor v. Rose Tree Media School Dist*., Civil Action No. 11–6733, 2013 WL 1776076 at *3 (E.D. Pa. Mar. 28, 2013) (citing authority).

Because Plaintiff is proceeding *pro se,* his Complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). The Court must "apply the applicable law, irrespective of whether [Plaintiff] has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (internal quotation marks and citation omitted). Notwithstanding this relaxed pleading-standard, however, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**ANALYSIS**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Furthermore, "sovereign immunity advances a jurisdictional bar . . . which the court may raise *sua sponte*." *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000) (citations omitted). In this case, many of the claims that Plaintiff might potentially try to assert are barred by sovereign immunity. Assuming that sovereign immunity is not a bar, Plaintiff's Complaint still fails to plausibly state any claim upon which relief could be granted.[2]

The crux of Plaintiff's grievance appears to be his inability to secure housing through the Housing Choice Voucher ("HCV") program established under Section 8 of the United States Housing Act of 1937 ("USHA"), as amended, 42 U.S.C. §1437, *et seq.* Congress authorized the HCV program "[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing." *Id.* §1437f(a). The program is overseen by

---

[2] It is not clear to this Court whether Plaintiff's May 31, 2018 filing was intended to be an amended pleading or evidence of some type of administrative proceeding. Out of an abundance of caution, and in order to better understand the nature of Plaintiff's putative claims, the Court will construe his original Complaint in light of the May 31st filing.

the United States Department of Housing and Urban Development ("HUD") and administered by local agencies in accordance with federal guidelines. *See Henry v. City of Erie*, 728 F.3d 275, 277 (3d Cir. 2013). "In Erie, the local administering agency is the Housing Authority of the City of Erie ("HACE")." *Id.* As one federal court recently explained:

> The Section 8 program is a tenant-based, housing-choice voucher program (HCV program) authorized under the USHA. With respect to the HCV program, the USHA authorizes the Secretary of HUD "to enter into annual contributions contracts with public housing agencies," who, in turn, "may enter into contracts to make assistance payments to owners of existing dwelling units in accordance with" the HCV Program. 42 U.S.C. § 1437f(b)(1). "The HCV program is generally administered by . . . PHAs [public housing authorities]. HUD provides housing assistance funds to the PHA. HUD also provides funds for PHA administration of the program." 24 C.F.R. § 982.1(a)(1). Thus, the HCV program is funded by HUD but administered by local PHAs. 42 U.S.C. § 1437f(b)(1). To participate in the program, families apply directly to the PHA. If the PHA approves the tenancy, PHA then enters into a contract "with the owner [of the rental unit] to make rent subsidy payments on behalf of the family." 24 C.F.R. §982.1(a)(2). The family pays a portion of its income as rent, and HUD reimburses the PHA for the rental subsidies provided to housing-unit owners through annual contributions contracts. *See* 42 U.S.C. §§ 1437f(b)(1), 1437f(o)(2)(A), and 24 C.F.R. §§ 982.1(a)(3), 982.151.
>
> PHAs develop a "written administrative plan that establishes the local policies for administration of the [HCV] program." 24 C.F.R. § 982.54(a). HUD regulations require the PHAs to "administer the program in conformity with the Fair Housing Act, Title VI of the Civil Rights Act of 1964, section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act." 24 C.F.R. §982.53(b)(1). HUD is not required to approve the PHA's plan.
>
> PHAs also develop their own policies for admission to the HCV program and administer their own waiting lists. 24 C.F.R. § 982.202. HUD regulations specifically provide "[a]n applicant does not have any right or entitlement to be listed on the PHA waiting list, to any particular position on the waiting list, or to admission to the programs." 24 C.F.R. § 982.202(c). In fact, PHAs are permitted to establish preferences designed to meet the needs of their local areas. 24 C.F.R. § 982.207(a). PHAs also determine when to open or to close their waiting lists. 24 C.F.R. § 982.206.

*Emrit v. Marion Cty. Hous. Auth. (MCHA)*, No. 3:16-CV-01854-BR, 2017 WL 743882, at *2-3 (D. Or. Feb. 23, 2017) (alterations in the original).

Here, Plaintiff is purportedly suing an Erie HUD "supervisor" and/or the agency itself based on the allegedly discriminatory conduct of certain unidentified HUD agents. Although the Complaint is vague about the nature of the underlying misconduct, Plaintiff's May 31st filing suggests that he believes he was lied to about the availability of Section 8 housing or was otherwise hindered from fully participating in, or benefitting from, the HCV program because of his race, disability, or both. Plaintiff's fundamental concern seems to be his inability to find suitable housing. For a variety of reasons, however, Plaintiff has failed to state a viable cause of action.

A. **Potential Statutory Claims**

First, to the extent Plaintiff is attempting to sue HUD or its local supervisor directly under Section 8, he cannot do so because "Section 8, codified at 42 U.S.C. §1437f, 'does not provide for a private right of action except for recovery of rent and utility allowances[.]'" *Emrit v. Lycoming Hous. Auth.*, No. 4:16-CV-02022, 2017 WL 2532966, at *6 (M.D. Pa. May 17, 2017), *report and recommendation adopted*, No. 4:16-CV-02022, 2017 WL 2506427 (M.D. Pa. June 9, 2017) (quoting *Chavis v. Bush*, 305 F. App'x 11, 12 (3d Cir. 2008) (*per curiam*)). Those types of issues are not relevant here, based on Plaintiff's averments.

Alternatively, Plaintiff may be attempting to state a claim under Title VIII of the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. §§3601 *et seq.,* which *does* afford aggrieved persons a private right of action for various forms of housing discrimination, including certain forms of discrimination predicated upon race or disability. *See id.* §§ 3604, 3613. In the context of this case, however, Plaintiff cannot assert a claim for damages against HUD or its agents in their official capacities, because such claims are barred by the doctrine of sovereign immunity. *See, e.g., Kelly v. Wilson*, 426 F. App'x 629, 632 (10th Cir. 2011) (noting that "[t]he United

States has not waived its sovereign immunity from suits for money damages under the Fair Housing Act"); *Emrit,* 2017 WL 743882, at *7 (holding that the FHA's limited waiver of sovereign immunity did not apply to plaintiff's claims relating to wait-list placement for Section 8 housing); *Phifer v. Dep't of Housing and Urban Dev*., No. CIV S–08–0299 LKK DAD PS, 2009 WL 8706810, at *4 (E.D. Cal. Feb. 2, 2009) ("Section 3613 [of the FHA] does not include an unequivocal waiver of sovereign immunity except as to liability for attorney's fees and costs in the event that the United States Attorney General intervenes and is not a prevailing party."); *Zhu v. Gonzales*, 2006 WL 1274767, at *5 (D. D.C. May 8, 2006) ("the Fair Housing Act does not waive sovereign immunity to permit suits against the federal government.").

To the extent Plaintiff is seeking nonmonetary relief, he has not alleged any facts that would plausibly render HUD or its agent liable under the FHA. As discussed above, HUD is not responsible for the actual administration of the HCV program; rather, that responsibility falls to the local PHA. Therefore, any injunctive relief that Plaintiff might seek in his quest to obtain suitable housing would necessarily have to be directed at the local PHA rather than HUD. *See Emrit,* 2017 WL 743882, at *7 (noting that injunctive relief could only be effectuated through the local PHA "because HUD does not have any authority to control or to direct Plaintiff's placement on the Section 8 housing waiting list"); *see also Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 531 (5th Cir. 1996) ("It is axiomatic that for an official to make a dwelling unavailable, that official must first have the authority and power to do so. In other words, the official must be in a position to directly effectuate the alleged discrimination.").

It also is conceivable that Plaintiff might try to assert claims under a number of statutes that more broadly prohibit discrimination in connection with federally funded programs or

activities. For example, Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, states that "[n]o person in the United States shall, on the ground of race . . . be excluded from participation in . . . any program or activity receiving Federal financial assistance." Similarly, Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12132, states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

Like the FHA, however, these statutes do not waive the federal government's sovereign immunity in the context of this case. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191 (4th Cir. 1999) (discussing Title VI's lack of waiver for federal sovereign immunity); *Dorsey v. U.S. Dep't of Labor*, 41 F.3d 1551, 1555 (D.C. Cir. 1994) (dismissing plaintiff's claims because he was "unable to point to any explicit language in the Rehabilitation Act (or in Title VI) waiving the government's sovereign immunity"); *Sarvis v. U.S.*, No. 99-0318, 2000 WL 1568230, at *2 (2d Cir. 2000) (Table case) ("Congress has not waived the Federal Government's sovereign immunity against awards of money damages for § 504[ ] violations, except where a federal agency is acting as a *'Federal provider' of financial assistance*.") (citing *Lane v. Pena*, 518 U.S. 187, 193 (1996)) (emphasis in original);[3]

---

[3] Congress's limited waiver is not applicable here, since Plaintiff's grievances do not relate to HUD's funding activities.

*Manns v Sims*, No. CV 17-3815 (JBS-AMD), 2018 WL 2230550, at *8 (D. N.J. May 16, 2018) (dismissing suit against the Federal Bureau of Prisons because "[t]he ADA does not contain a waiver of sovereign immunity and thus, does not apply to the federal government") (citing *Whooten v. Bussanich*, No. 4:CV-04-223, 2005 WL 2130016, at *7 (M.D. Pa. Sept. 2, 2005)). Accordingly, Plaintiff cannot assert monetary damages claims against HUD or its officials under Title VI, the ADA, or the Rehabilitation Act.

Moreover, as discussed, HUD does not administer the Section 8 HCV program and, therefore, its agents are not in a position to effectuate Plaintiff's inclusion or exclusion from that program. Even if that were not so, Plaintiff could not obtain relief against the local HUD supervisor under Title VI, the Rehabilitation Act or the ADA because none of these statutes allows claims to be asserted against individual defendants. *See L. L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 549 n. 4 (3d Cir. 2017) (affirming summary judgment for individual defendants on the ground that Title VI does not provide for individual liability) (citing *Shotz v. City of Plantation*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003)); *Boggi v. Med. Review & Accrediting Council*, 415 F. App'x 411, 414-15 (3d Cir. 2011) (holding that plaintiff failed to state a viable ADA claim against any of the "non-entity defendants" that were sued in their individual capacities); *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (noting that "Section 504 [of the Rehabilitation Act] applies to federal financial assistance recipients[,]" and concluding that plaintiff could not state a Rehabilitation Act claim against individual defendants because they did not receive federal aid); *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (no individual liability exists under Title II of the ADA). Because HUD and its agents are not proper defendants under Title VI, the Rehabilitation Act or the ADA, Plaintiff has not stated a plausible claim for relief under those statutes.

### B. Potential *Bivens* Claim

Based on the Complaint's reference to "14th Amendment Due Process," the Court assumes that Plaintiff also may be trying to assert a *"Bivens"* action[4] predicated on perceived violations of his substantive and/or procedural due process rights.[5] A *Bivens* action may not be asserted against a federal agency or against a federal agent in his official capacity. *Meyer*, 510 U.S. at 484-86; *Bethea v. Roizman*, No. CIV. 11-254 JBS/JS, 2012 WL 2500592, at *26 (D. N.J. June 27, 2012); *Buchanan v. U.S.,* Civil Action No. 1:05-CV-0887, 2007 WL 983312, at *3-4 (M.D. Pa. Mar. 27, 2007).

To the extent Plaintiff seeks damages against the local HUD supervisor in his personal capacity, Plaintiff must make a plausible showing that Defendant, acting under color of federal law, deprived him of a right secured by the Constitution or laws of the United States. *Walker v. Ramirez,* No. 1:17-CV-01938, 2018 WL 2734873, at *3 (M.D. Pa. June 7, 2018). Because *Bivens* liability cannot be predicated on a theory of *respondeat superior*, Plaintiff must plead facts showing Defendant personally was involved in the alleged wrongdoing. *Farrar v. McNesby*, 639 F. App'x 903, 906-07 (3d Cir.), *cert. denied*, 137 S. Ct. 503 (2016).

As noted, Plaintiff appears to be asserting that his due process rights were violated. The Due Process Clause contains both a procedural and substantive component. *American Exp.*

---

[4] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 389 (1971) (holding that a federal agent who violates the constitutional rights of an individual while acting under color of his authority can be sued in his personal capacity for damages).

[5] Because Plaintiffs' grievances concern actions allegedly taken by federal agents, his due process claims actually implicate rights derived from the Fifth Amendment rather than the Fourteenth Amendment. *See Levys v. Shamlin*, No. CV 16-1624, 2017 WL 5714027, at *3 n.5 (W.D. Pa. Nov. 28, 2017) ("The Fifth Amendment's Due Process Clause only applies to actions of the federal government, whereas the Fourteenth Amendment's Due Process Clause applies to acts under color of state law.") (citing *B & G Constr. Co., Inc. v. Director, Office of Workers' Comp. Programs*, 662 F.3d 233, 246 & n. 14 (3d Cir. 2011)).

*Travel Related Services, Inc. v. Sidamon–Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). Procedural due process ensures that an individual has an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted). "To state a claim for the deprivation of procedural due process, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the [Fifth] Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *N'Jai v. U.S. E.P.A.*, No. Civ. A. 13-1212, 2014 WL 2508289, at *18 (W.D. Pa. June 4, 2014) (alteration in the original, internal quotation marks and citations omitted). Moreover, "[i]n order to state a claim for failure to provide due process, a [p]laintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Regarding the first element – deprivation of a protected interest – the Supreme Court has instructed that:

> [t]he procedural component of the Due Process Clause does not protect everything that might be described as a "benefit": "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972). Such entitlements are, "'of course, . . . not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Paul v. Davis*, 424 U.S. 693, 709, 96 S. Ct. 1155, 47 L.Ed.2d 405 (1976) (quoting *Roth, supra*, at 577, T92 S. Ct. 2701); *see also Phillips v. Washington Legal Foundatio*n, 524 U.S. 156, 164, 118 S. Ct. 1925, 141 L.Ed.2d 174 (1998).
>
> Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion. *See, e.g., Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462–463, 109 S. Ct. 1904, 104 of L.Ed.2d 506 (1989). . . .

*Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 756 (2005) (ellipsis in the original).

"[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal quotation marks and citation omitted). In order to state a claim for an alleged substantive due process violation, "'a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience.'" *Lear v. Zanic*, 524 F. App'x 797, 801–02 (3d Cir. 2013) (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)). Substantive due process protects only those property interests that are "fundamental" to the Constitution. *See Nicholas v. Pennsylvania State University*, 227 F. 3d 133, 140 (3d Cir. 2000).

Here, Plaintiff has not asserted facts that plausibly establish the deprivation of a constitutionally protected property or liberty interest. Under federal regulations, Plaintiff has no property right, much less a fundamental property right, to obtain publicly subsidized housing under the HCV program. *See* 24 C.F.R. §982.202(c) ("An applicant does not have any right or entitlement to be listed on the PHA waiting list, to any particular position on the waiting list, or to admission to the programs."). Assuming that Plaintiff has a non-fundamental property right to participate in the HCV program in accordance with the program's terms, Plaintiff has not plausibly alleged that HUD or its agents actually deprived him of that right because the program is administered exclusively by the local public housing authority. In addition, for procedural due process purposes, Plaintiff has not alleged any facts establishing what procedural avenues were available to him to redress his grievance, whether he took advantage of those procedures, and, if so, how they were constitutionally inadequate.

Plaintiff also has failed to state facts that could establish a plausible deprivation of his equal protection rights. To state a plausible violation, Plaintiff must allege facts showing that Defendant treated similarly situated white individuals differently. *Hodge v. U.S. Dep't of Justice*, 372 F. App'x 264, 268 (3d Cir. 2010); *Castillo v. FBOP FCI Fort Dix*, 221 F. App'x 172, 175 (3d Cir. 2007). Plaintiff has not done so here.

Beyond these deficiencies, however, Plaintiff has failed to establish that Defendant was personally involved in the alleged wrongful conduct. Although the Complaint is ostensibly directed against a HUD "supervisor" who resides in Erie, Compl. ¶2, the pleading fails to specifically identify what specific role, if any, this individual played in the alleged wrongdoing.

Finally, Plaintiff has not alleged facts showing that Defendant's purportedly wrongful conduct is the proximate cause of his inability to obtain publicly subsidized housing. *See Egervary v. Young,* 366 F.3d 238, 246 (3d Cir. 2004) (observing that "tort law causation must govern [the court's] analysis of [a] *Bivens* claim," and "[t]hus, as in any tort case, [the plaintiff] must demonstrate that defendants' actions were the proximate cause of the harm he suffered"). Because the HCV program is administered by the local public housing authority, HUD officials do not have the authority either to mandate or preclude Plaintiff's participation in that program. Accordingly, to the extent Plaintiff seeks to obtain suitable subsidized housing, his concerns must be addressed by the local PHA, not HUD.[6]

---

[6] For this same reason, Plaintiff has not plausibly alleged any basis for obtaining injunctive relief against HUD or its local supervisor. *See Castillo v. FBOP FCI Fort Dix,* 221 F. App'x 172, 176 n.4 (3d Cir. 2007) (recognizing court's equity jurisdiction under 28 U.S.C. §1331); *see also Emrit v. Marion Cty. Housing Auth. (MCHA),* No. 3:16-cv-1854-BR, 2017 WL 743882, at *8 (D. Or. Feb. 23, 2017) ("[A]lthough Plaintiff also seeks injunctive relief, the relief he seeks can only be granted by [the Marion County Housing Authority] because HUD does not have the authority to control or to direct Plaintiff's placement on the Section 8 housing waiting list.").

### C. Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Fletcher-Hardee Corp. v. Pote Concrete Contractors*, 482 F.3d 247, 253 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3rd Cir. 2002). In this case, the defects in Plaintiff's claims against HUD and/or its local supervisor are irremediable. Therefore, further amendment would be futile.

Consistent with the foregoing, the Court hereby enters the following:

### II. ORDER

For the reasons stated herein, Plaintiff's Complaint (**Doc. 4**) hereby is **DISMISSED**. To the extent that Plaintiff's claims are barred by the doctrine of sovereign immunity, those claims are dismissed without prejudice for lack of subject matter jurisdiction. Plaintiff's remaining claims are dismissed with prejudice inasmuch as they fail to state a viable cause of action, and the deficiencies discussed above cannot be cured through further amendment.

IT IS SO ORDERED.

June 21, 2018                                                  s\Cathy Bissoon
                                                                          Cathy Bissoon
                                                                          United States District Judge

cc (via First-Class U.S. Mail):

Amos Lee Tate
3718 Hazel Street
Erie, PA  16508